David Leichtman (NY SBN 2824480) *(admitted pro hac vice)*
Shane Wax (NY SBN 5347695) *(admitted pro hac vice)*
185 Madison Avenue, 15th Floor
New York, New York 10016
Tel: 212-419-5210, Ext. 1
Email: dleichtman@leichtmanlaw.com
Email: swax@leichtmanlaw.com

Godwin LLP
Harold McDougall IV (CA SBN 234972)
12021 Wilshire Blvd #538
Los Angeles, CA 90025
Tel: (424) 704-5647
Email: hmcdougall@godwinllp.biz

*Attorneys for Plaintiff Julie Dermansky*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE DERMANSKY, a Louisiana Resident,<br><br>        Plaintiff,<br><br>vs.<br><br>THE YOUNG TURKS, INC., a Delaware Corporation,<br><br>        Defendants. | Case No.: 2:23-cv-05868-SB-SK<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT THE YOUNG TURKS, INC.'S MOTION TO PARTIALLY DISMISS THE FIRST AMENDED COMPLAINT**<br><br>**Judge: Hon. Stanley Blumenfeld, Jr.**<br>**Courtroom: 6C (350 W. 1st Street)**<br>**Hearing Date: October 13, 2023**<br>**Time: 8:30 a.m.**<br>**Complaint filed: March 17, 2022**<br>**FAC filed: August 28, 2023**<br>**Trial date: March 25, 2024** |

# TABLE OF CONTENTS

**INTRODUCTION** ..................................................................................................1

**STATEMENT OF FACTS** .....................................................................................2

The Infringing EPA Photograph .........................................................................2

The Four Infringing Photographs In The Josh Fox Video ....................................2

**ARGUMENT** ........................................................................................................3

I. **Plaintiff's Claims Regarding The EPA Photograph Are Not Time-Barred** ..................................................................3

II. **Plaintiff's Contributory infringement Claim Is Sufficiently Pleaded** ...........................................................11

    A. *Young Turks Knew Or Should Have Known of the Infringing Activity* ..............12

    B. *Young Turks Materially Contributed to the Infringing Activity* ......................14

    C. *Defendant's Remaining Arguments Lack Merit* .................................................16

III. **Plaintiff's Section 1202 Claim Is Sufficiently Pleaded** ...........................18

**CONCLUSION** ....................................................................................................23

# TABLE OF AUTHORITIES

Cases

*A & M Records, Inc. v. Napster, Inc.*, 114 F. Supp.2d 896 (N.D. Cal. 2000) ...................17

*A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001)..............................12

*Am. Broad. Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014) .................................................8

*APL Microscopic, LLC v. United States*, 144 Fed. Cl. 489 (Fed. Cl. 2019) ................7, 10

*Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110 (2d Cir. 2010)...........................12, 14

*Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065 (9th Cir. 2021) ..................................8

*Columbia Pictures Indus. v. Gary Fung*, 710 F.3d 1020 (9th Cir. 2013).........................13

*Dermansky v. Hayride Media, LLC*, Civ No. 2:22-cv-03491-WBV-KWR
   (E.D. La. 2023) .............................................................................................................20

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004).........................................................12

*Fahmy v. Live Nation Entm't, Inc.*, No. 2:15-cv-01158-CAS (PJWx),
   2015 U.S. Dist. LEXIS 75347 (C.D. Cal. June 8, 2015)..........................................13, 14

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159
   (2d Cir. 1971) ................................................................................................................12

*Havens Realty Corp.* v. *Coleman*, 455 U.S. 363 (1982).......................................................7

*Klehr* v. *A. O. Smith Corp.*, 521 U.S. 179 (1997)................................................................7

*Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068 (9th Cir. 2013) ..........................17

*Mango v. Buzzfeed*, 970 F.3d. 167 (2d Cir. 2020) ...................................................19, 21, 22

*Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693 (2d Cir. 1998) .......................12

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 259 F. Supp. 2d 1029
   (C.D. Cal. 2003) .............................................................................................................12

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 380 F.3d 1154 (9th Cir. 2004) ...12

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).......12, 15, 17

*Mills v. Netflix, Inc.*, No. 19-cv-07618-CBM, 2020 WL 548558
   (C.D. Cal. Feb. 3, 2020) ...........................................................................22

*Munhwa Broad. Corp. v. Song*, No. 14-CV-04213-RGK (RZx),
   2015 U.S. Dist. LEXIS 77909 (C.D. Cal. May 12, 2015)..................12, 14, 15

*Murphy v. Millenium Radio Grp. LLC*, 650 F.3d 295, 303 (3d Cir. 2011) ......................22

*Panoramic Stock Images, Ltd. v. Pearson Educ., Inc.*, No. 12-cv-9918,
   2013 WL 2357586 (N.D. Ill. May 29, 2013). ........................................17, 18

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146  (9th Cir. 2007) ..............................12

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017).......................................9

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007)...........................12

*Petrella v. MGM*, 572 U.S. 663 (2014) .........................................................................3, 6

*Roley v. New World Pictures, Ltd.*, 19 F.3d 479 (9th Cir. 1994), .......................................4

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)........................12

*Starz Entm't LLC v. MGM Domestic Tel. Dist, LLC*, 39 F.4th 1236 (9th Cir. 2022), .........4

*Tarantino v. Gawker Media, LLC*, No. 14-CV-603-JFW, 2014 WL 2434647
   (C.D. Cal. Apr. 22, 2014) .......................................................................15, 16

*Walker Digital, LLC v. Facebook, Inc.,* 852 F. Supp.2d 559 (D. Del. 2012)....................20

*William A. Graham Co. v. Haughey*, 568 F.3d 425 (3d Cir. 2009) ..................................4, 6

*Wolf v. Travolta*, 167 F. Supp.3d 1077 (C.D. Cal. 2016)...............................................9, 10


Statutes

17 U.S.C. § 507(b) .........................................................................................................3, 5

17 U.S.C. § 1202........................................................................................................18, 20, 23

17 U.S.C. § 1202(b) .......................................................................... 18,19, 21, 22, 23

17 U.S.C. § 1202(c) ..................................................................................................18, 20

# INTRODUCTION

Plaintiff Julie Dermansky ("Dermansky") is a professional commercial photographer, who provides, among other services, journalistic photography services to clients. Dermansky charges and invoices these clients for the cost of her services, and further licenses her photographs for use by such clients according to limitations specified under her written and oral licensing agreements. Dermansky also licenses her photographs for defined uses on the Internet.

At issue in this case are five of Dermansky's copyrighted photographs which were taken unlawfully by Defendant The Young Turks, Inc. ("TYT") and used for its own financial gain. One Photograph, the "EPA Photograph," was used by TYT in connection with a YouTube video on their own YouTube channel. The other four Photographs, the "Entergy," "Pipeline," "Rolfes," and "Nurdles" Photographs (collectively, with the EPA Photograph, the "Photographs"), were used by TYT in connection with a video in their series "Staying Home with Josh Fox" (the "Josh Fox Video").

Dermansky brings suit for TYT's infringement of the copyrights in her Photographs, its active encouragement of the infringement of its users, and under 17 U.S.C. § 1202, for the alteration and/or removal of her Copyright Management Information ("CMI").

Defendant TYT has moved for partial dismissal as to one of the Photographs on the basis of the statute of limitations, to dismiss the contributory infringement claims, and to dismiss the Section 1202 claims as to the other four photographs ("TYT's Motion" or "TYT's Memo of Law"). It is important to note that although this case was filed in March 2022 in the District of Delaware, no discovery has yet taken place because the Delaware District Court stayed discovery pending TYT's earlier motion to transfer or dismiss (See Dkt. Nos. 10, 26, 29 37). When that Court transferred the case to this District, it did not decide any of the issues raised by the current motion. This is Dermansky's opposition.

---

**PLAINTIFF'S OPPOSITION TO PARTIAL MOTION TO DISMISS**

## STATEMENT OF FACTS

### The Infringing EPA Photograph

In its motion, TYT claims that its infringement of the EPA Photograph commenced in 2017 and, citing the second screenshot contained in Exhibit J to the Complaint, that Dermansky located the infringement in 2018. However, TYT omits the fact that it continued to infringe the EPA Photograph by continuing to distribute, perform and display the infringing video until 2021, less than a year before the filing of this suit. Specifically, TYT still used the EPA Photograph on its YouTube channel at least as of March 18, 2021. (*See* Declaration of Amanda Inglesh, dated June 7, 2022 ("Inglesh Decl."), Dkt. No. 21, at ¶¶ 5-7 and Exs. 2-3 thereto).

### The Four Infringing Photographs In The Josh Fox Video

When Dermansky published each of the four infringing photographs contained in the Josh Fox Video with DeSmog, each Photograph contained a distinct watermark on its face with the phrase "(c) Julie Dermansky." (*See* Declaration of Julie Dermansky dated June 6, 2022 ("Dermansky Decl.), Dkt. No. 20, at ¶ 5 and Exs. 2-5 thereto). However, when Dermansky discovered the Josh Fox Video in 2020, from which it was evident that TYT simply stole the photographs from DeSmog, she noticed that her watermarks were no longer present or were significantly altered. *Id.* at ¶¶ 7, 9; *compare id.* at Exs, 2-5 with Complaint Exs. K-N. Dermansky is not aware of any authorized publication of the Photographs without this distinct watermark. *Id.* at ¶ 6.

After removing Dermansky's watermark by either cropping the photographs or otherwise altering them, TYT included a separate credit below its Josh Fox Video attributing authorship of the photographs to Dermansky, but implying falsely that the photographs were owned by DeSmog by stating: "Photo by Julie Dermansky for DeSmog Blog." Complaint Exs. K-N. (A portion of Dermansky's watermark is present on the infringing Entergy Photograph (Complaint Ex. L), but it is largely obscured).

# ARGUMENT

## I.  Plaintiff's Claims Regarding The EPA Photograph Are Not Time-Barred

TYT argues that Plaintiff's claims are time-barred with respect to the EPA Photograph, because the infringing video first appeared in 2017, more than three-years before the complaint was filed on March 17, 2022.  But it is elementary that the statute of limitations in the Copyright Act does not work that way.  Under 17 U.S.C. § 507(b), there is a "three-year look-back" period and, where the infringement is a continuing one, as here, the three-year period does not run if the infringement began earlier.

In *Petrella v. MGM*, 572 U.S. 663 (2014), binding Supreme Court precedent which TYT fails to cite, the heir of the author of 'Raging Bull,' had been aware of the infringement for nearly ten years, but waited to bring suit until the film became profitable. *Id.* at 676.  The defendant argued, exactly as TYT does, that the statute of limitations and laches barred the plaintiff's claims.

The Supreme Court rejected that argument:

> *It is hardly incumbent on copyright owners, however, to challenge each and every actionable infringement.  And there is nothing untoward about waiting to see whether an infringer's exploitation undercuts the value of the copyrighted work, has no effect on the original work, or even complements it.*

*Id.* at 682.  Rather, "even if an infringement is harmful, the harm may be too small to justify the cost of litigation," and thus the Copyright Act "allows a copyright owner to defer suit until she can estimate whether litigation is worth the candle."  *Id.* at 683.  The only consequence of waiting is that a copyright holder may "miss out on damages for periods *prior to the three-year look-back*."  *Id.* (emphasis added).

Thus, here, although Dermansky may have initially discovered the infringement of the EPA Photograph a few months before the three-year look-back commenced, TYT continuously infringed the copyright in the photograph through at least 2021, within the three-year period.  Accordingly, her claim is not time barred.

TYT relies heavily on *Roley v. New World Pictures, Ltd.*, 19 F.3d 479 (9th Cir. 1994), but that pre-*Petrella* decision does not support its position. There, while the Court found the claim time barred, it was not because the infringement had been discovered prior to the three year-lookback period, making it non-analogous to the situation here. Instead, it was because, *at the summary judgment stage*, Plaintiff had adduced no evidence that there was continuing infringement into the three-year look-back period. Again, importantly, here there has not yet been any discovery. Notably, the *Roley* court, pre-dating *Petrella*, stated: "[i]n a case of continuing copyright infringements, an action may be brought for all acts that accrued within the three years preceding the filing of the suit." *Roley*, 19 F.3d at 481. The Court noted that Roley had filed his case on February 7, 1991, so the statute of limitations only barred "recovery of any damages for claims that accrued prior to February 7, 1988." *Id.* While in that case, after the completion of discovery, the plaintiff did not uncover any evidence of acts occurring after February 7, 1988 when the three year look-back commenced, and his assertions, at the summary judgment stage, relied only on "naked allegations and speculations." By contrast here, there is at least one example in the complaint showing infringement in 2021, making this case factually distinguishable from *Roley*, particularly because of the differing procedural postures of the cases. And, in the recent decision of *Starz Entm't LLC v. MGM Domestic Tel. Dist, LLC*, 39 F.4th 1236 (9th Cir. 2022), the Ninth Circuit, post-*Petrella*, confirmed that *Roley* stands for the proposition that "when the copyright holder knew of earlier infringing acts, recovery was allowable only for infringing acts occurring within the three-year window before commencing suit." *Starz*, at 1240.

TYT also neglects the highly similar fact pattern in the decision in *William A. Graham Co. v. Haughey*, 568 F.3d 425 (3d Cir. 2009), where the Court held that, "in continuing infringement cases such as this, each act of infringement is a distinct harm

giving rise to an independent claim for relief."[1]  In *Graham*, the only issue was whether actual damages incurred *prior to* February 8, 2002 (more than three-years before the complaint filed on February 8, 2005) could be recovered: "Graham was not time-barred from recovering for any acts of infringement that occurred on or after February 9, 2002, regardless of whether the injury or discovery rule applies to determine the accrual of claims under the Copyright Act.  *That is not in dispute*.  Instead, the parties differ on whether Graham may also recover for any acts of infringement that occurred prior to February 9, 2002."  *Id.* at 433 (emphasis added).

Here, while TYT may have posted its video containing the EPA Photograph more than three-years prior to the filing of the complaint, it was still on TYT's public-facing website and generating advertising revenue for TYT during the three-years before Dermansky filed suit.  (Inglesh Decl., Dkt. No. 21, at Exs. 1-3; Complaint Ex. J, first page).  At a minimum, Dermansky can therefore recover for damages incurred during that three-year period.  *See Petrella*, 572 U.S. at 671-72 ("when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (i.e., acts within the three-year window), but untimely with respect to prior acts of the same or similar kind.").

Indeed, as in *Petrella*, while Dermansky may have been aware of TYT's initial infringement of just the EPA Photograph in 2018, it was not until she discovered later that

---

[1] Defendant cites primarily to Ninth Circuit and California District Court cases, but because this case was transferred from the District of Delaware, Third Circuit law arguably applies to statute of limitations issues.  *See Van Dusen v. Barrack*, 376 U.S. 612 (1964) (diversity case); *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037 (9th Cir. 2012) (federal question case, applying Maryland state law statute of limitations).  Although the statute of limitations in copyright cases is supposed to be based on uniform federal law, there are currently circuit splits regarding the statute of limitations, and thus Third Circuit law should provide the rule of decision, and at a minimum, is persuasive authority.  In any event, under either Ninth Circuit, or Third Circuit law, Dermansky's infringement claim with regard to the EPA Photograph is not time barred.

---

**PLAINTIFF'S OPPOSITION TO PARTIAL MOTION TO DISMISS**

TYT also infringed her four other photographs that litigation became "worth the candle," as approved of in *Petrella*. (Dermansky Decl., Dkt. No. 20, at ¶¶ 8-13). And as in *Graham* and *Petrella*, and as recognized by *Starz* and *Roley*, this case involves continuing infringement within the three-year look-back period. While TYT relies on a screenshot on the second page of Exhibit J to suggest that Dermansky slept on her rights, the screenshot from the first page of the very same exhibit was taken in approximately October 2020, and was still available on TYT's website as of at least March 18, 2021. (Inglesh Decl., at ¶¶ 2, 7). TYT's ongoing infringement of the EPA Photograph within the three-year look-back period thus allows Dermansky to bring suit and recover damages for those continuing infringing acts falling within the three-year timeframe, as each day it remained posted constituted a new accrual of the statute of limitations under Petrella. Accordingly, Dermansky's action as to the EPA Photo was timely filed and the motion should be denied.

In reply, it is expected that TYT will point to footnote 6 in *Petrella*, but that footnote does not support its position. Before that footnote, the Supreme Court first pointed out that "[i]t is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs. In short, each infringing act starts a new limitations period." *Petrella*, 572 U.S. at 671-72 (hereafter, the "separate accrual" rule). While the Supreme Court referenced only the reproduction and distribution rights from Section 106 ("Exclusive rights in Copyrighted works") in that passage, which are found in Sections 106(1) and 106(3), that is because those were the only rights at issue in that case. But there is no justification for treating the public display or public performance rights under Sections 106(5) and 106(6) any differently. Those rights are not afterthoughts or disfavored stepchildren; they are an integral part of the statute which treats them identically as the reproduction and distribution rights, with one exception that the

---

**PLAINTIFF'S OPPOSITION TO PARTIAL MOTION TO DISMISS**

6

performance and display rights require the infringing work to be displayed or performed "publicly." That exception is not applicable here as the public nature of Defendant's infringement here is not contested.

The principal right at issue here is the display right, which is defined under Section 101 of the Copyright Act as meaning "to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process or, in the case of a motion picture or other audiovisual work, to show individual images nonsequentially." 17 U.S.C. § 101. Here, TYT "showed a copy" of the EPA Photograph on its YouTube Channel, every single day, including within the three-year look-back period, and thus infringed it each day the EPA Photograph was on their YouTube Channel for viewing. *See APL Microscopic, LLC v. United States*, 144 Fed. Cl. 489, 496-499 (Fed. Cl. 2019) ("each time a user viewed NASA's webpage, APL's copyrighted Work was displayed on the user's computer. Consequently, each of these displays constituted a separate infringement on APL's right of public display under § 106(5), with each infringement starting a new limitations period" under the statute addressing government infringements using identical language to Section 507(b)).

Turning, then, to footnote 6 of *Petrella*, it is acknowledged that the Supreme Court did note that: "Separately accruing harm should not be confused with harm from past violations that are continuing." *Id.* at 671, n. 6 (*comparing Klehr* v. *A. O. Smith Corp.*, 521 U.S. 179, 190 (1997) *with Havens Realty Corp.* v. *Coleman*, 455 U.S. 363, 380–381 (1982)). The purpose of that footnote, however, which is *dicta*, was not to make some arbitrary distinction between the continuing nature of the infringement of rights under Sections 106(1) and (3), on the one hand, and infringement of rights under Sections 106(5) and (6), on the other hand. Rather, it is intended to address the harm caused by the act, regardless of when that act occurred. Here, each time TYT collected advertising or subscription revenue, or when its viewers shared, viewed or downloaded the infringing works (*see* Section II below), Dermansky was separately harmed because she was deprived

of sharing in that revenue which a license would have required.  Defendants cannot simply post a photograph on a wall, and then disclaim any responsibility three years later.

Moreover, one of the remedies sought in this case is an injunction preventing continuing and future use.  While the statute of limitations can be used to limiting damages for the EPA Photograph to the period of time during the three-year look-back window, there is nothing that prevents the Court from issuing a forward-looking injunction:  any other rule would simply reward continuing infringement.  Thus, as a policy matter, for this additional reason, this is a limitation of damages issue, and not a liability issue that subjects the claim to dismissal.

In addition, to the extent TYT may attempt in its reply brief to rely on the so-called "volitional act" doctrine to the question of the continuous accrual of Dermansky's claim, that doctrine applies only in contexts not at issue here.[2]   It is elemental that copyright infringement is a strict liability tort.  *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1081 (9th Cir. 2021).  And there is nothing in the "separate accrual" rule described in

---

[2] For example, in *American Broadcasting Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014), Aereo argued that it merely supplied equipment that responded to users' directives, and therefore any violation of the performance right, if any, was a result of the user's volitional act, rather than that of Aereo.  In rejecting this defense, the Supreme Court majority held that even though "Aereo's system remains inert until a subscriber indicates that she wants to watch a program," and "[o]nly at that moment, in automatic response to the subscriber's request, does Aereo's system activate an antenna and begin to transmit the requested program," nevertheless, despite this automated feature, "this difference means nothing to the subscriber. It means nothing to the broadcaster.  We do not see how this single difference, invisible to subscriber and broadcaster alike, could" avoid infringement." *Id.* at 444.  Even the dissent noted that the so-called "volitional conduct" argument is limited to specific circumstances, not present here:  "The volitional-conduct requirement is not at issue in most direct-infringement cases. . . . But it comes right to the fore when a direct-infringement claim is lodged against a defendant who does nothing more than operate an automated, user-controlled system." *Id.* at 454 (dissenting opinion).  The issue here is not whether some automated system caused the initial infringement; there is no dispute that TYT acted with "volition" when it uploaded the content and continued to sell advertising and subscriptions, as well as encouraging its users to share, download and view the posts.

---

**PLAINTIFF'S OPPOSITION TO PARTIAL MOTION TO DISMISS**

8

*Petrella* that requires a new act of "volition" each time a display or performance occurs within the three-year look-back period. *See id.* (*quoting Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017)) ("The word 'volition' in the copyright context does not really mean an 'act of willing or choosing' or 'an act of deciding.'").  Indeed, any such requirement would be antithetical to the very notion of an exclusive right to "display" a copyrighted work, since once the infringer displays the work to the public, it is continuously viewable and the Defendant can continue to benefit economically from the infringement, harming the copyright owner on a daily basis.

The rationale that, somehow, the statute of limitations would be eviscerated for infringing works on the Internet if the display right were treated the same way as the reproduction and distribution rights is neither true, nor supported by the statute.  Would-be defendants are protected by the three-year look-back rule whether the infringement is on the Internet or elsewhere.  And there is nothing in the statute that treats infringements in one media any differently than others.  In any event, that rationale was directly rejected by the Supreme Court's statement in *Petrella* that a copyright Plaintiff can wait to sue until the case is "worth the candle."

TYT cites one district court opinion, *Wolf v. Travolta*, 167 F. Supp.3d 1077 (C.D. Cal. 2016) for its argument that the display right should be treated differently than the rights at issue in *Petrella*.  (TYT's Memo of Law, Dkt. No. 75, at 6).  But *Wolf* stands only for the unremarkable proposition that damages are not available for the pre-three-year look-back period before the complaint was filed: "[D]efendants argue that plaintiffs should be barred from seeking damages for any alleged copyright infringement that occurred before February 6, 2011 as to the first claim, or before August 5, 2012 as to the second claim.  As explained in the discussion below, the Court agrees, and finds that plaintiffs are barred from seeking damages attributable to infringement occurring beyond the three years preceding plaintiffs' assertion of the two copyright claims."  *Wolf*, 167 F. Supp.3d at 1092.

---

**PLAINTIFF'S OPPOSITION TO PARTIAL MOTION TO DISMISS**

Similar to *Roley*, the *Wolf* case was decided at the summary judgment stage, and Plaintiff had failed to adduce admissible evidence during discovery that acts within the three-year look-back period were performed by either the Defendants or third parties.  *See id.* at 1100 ("Although two of plaintiffs' proffered documents are dated April 19, 2011 and July 28, 2014, respectively— dates *within* the relevant three-year statute of limitations— the documents were produced by third-party regional centers without any indication as to whether defendants themselves created, edited, or distributed the documents.").  Thus, in the footnote relied upon by TYT in its Memo of Law, the Court stated: "Plaintiffs have failed to produce admissible evidence creating a genuine dispute of material fact regarding whether "the [alleged] infringer commit[ted] a new wrong" by reproducing or distributing the infringing work within three years of the initiation of this suit."  *Id.* at 1099 n. 13.

Respectfully, Plaintiff believes the focus of that court on some new affirmative act within the three years is simply wrong, for the reasons stated above.  *See*, *e.g.*, *APL Microscopic*, 144 Fed. Cl. 489.  But in any event, by contrast, this case has not had the benefit of any discovery, and therefore, even if some "new" act of "volition" was required and the Court were to incorrectly decide that the display right should be treated differently in a manner not supported by the plain language of the statute, it is unknown what acts the Defendants may have committed within the three years prior to the Complaint since no discovery has taken place.  Indeed, the evidence in the Complaint and the Inglesh Declaration show that TYT's infringement was still available in 2020 and 2021, within the three-year time frame.[3]

---

[3] To the extent that TYT attempts to cite additional cases on this issue in its Reply Brief, Plaintiff requests the right to file a sur-reply to respond to any such additional cases. Plaintiff acknowledges that there are a handful of district court decisions around the country dismissing portions of display right cases at the motion to dismiss stage, but maintains they are either wrongly decided or factually distinguishable (because, for example, the only thing on display within the three-year look-back period was a link rather the infringed work itself).  Importantly, Plaintiff is not aware of either any 9th Circuit or any other appellate court decision that has decided, post-*Petrella*, that the display or

## II.   Plaintiff's Contributory infringement Claim Is Sufficiently Pleaded

Plaintiff's contributory infringement claim as to the EPA Photograph is also sufficient at this stage of the proceedings.  TYT enabled and encouraged third parties to distribute the EPA Video and otherwise display the EPA Photograph without Plaintiff's authorization and therefore Plaintiff has an actionable claim for contributory infringement. The FAC sufficiently alleges facts in support of this claim.

The FAC alleges that Young Turks is liable for contributory infringement because "Defendant directed, encouraged or otherwise knowingly contributed to the distribution of the EPA Video and display of the EPA Photograph by third parties within three years of the commencement of this Action." (FAC, Dkt. No. 72, at ¶ 23).  Specifically, the FAC alleges that, as a result of TYT's use of the "EPA Photograph as the promotional image for the EPA Video," third parties "reproduced, distributed and/or publicly displayed the EPA Photograph each time [they] shared the EPA Video or a hyperlink to the EPA Video, with or without embedding the EPA Video." (*Id.* at ¶ 89).  Exhibit J to the Complaint provides a visual example of how the EPA Photograph is distributed and displayed on third-party websites when "shared" or embedded.  Furthermore, discovery will likely show that Defendant enabled or encouraged third parties to download the EPA Video and EPA Photograph directly from TYT's YouTube Channel, as is the case with nearly every video that Defendant publishes to that same YouTube Channel.  (Declaration of Shane wax, dated Sept. 22, 2023, filed herewith ("Wax Decl."), at ¶ 2 and Ex. A (showing examples of 17 videos that are currently downloadable directly from TYT's YouTube Channel, including videos from the time period that the infringing EPA Video was available).

These allegations are sufficient at the pleading stage. "One infringes contributorily by intentionally inducing or encouraging direct infringement." *Metro-Goldwyn-Mayer*

---

performance rights should be treated differently than the reproduction and distribution rights for purposes of the three-year look-back rule.

*Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 419 (1984) (a "contributory infringer" is one who is "in a position to control the use of copyrighted works by others and had authorized the use without permission from the copyright owner."); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1175 (9th Cir. 2007) ("in general, contributory liability is based on the defendant's failure to stop its own actions which facilitate third-party infringement."). "Put differently, liability exists if the defendant engages in 'personal conduct that encourages or assists the infringement.'" *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001) (*quoting Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998)).

Thus, a Plaintiff must plead two elements: (1) knowledge of, and (2) material contribution to, the infringing activity of another. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 259 F. Supp. 2d 1029, 1035 (C.D. Cal.), *aff'd*, 380 F.3d 1154 (9th Cir.), *aff'd in part, rev'd in part*, 545 U.S. 913 (2005); *accord Munhwa Broad. Corp. v. Song*, No. 14-CV-04213-RGK (RZx), 2015 U.S. Dist. LEXIS 77909, at *11 (C.D. Cal. May 12, 2015) (*quoting Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007)). Plaintiff has adequately pleaded each of these elements.

A. *Young Turks Knew Or Should Have Known of the Infringing Activity*

The FAC sufficiently pleads that Defendant had the requisite knowledge.

"Contributory liability requires that the secondary infringer 'know or have reason to know' of direct infringement." *Napster*, 239 F.3d at 1020; *see also Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (holding the knowledge requirement for contributory infringement includes "both those with actual knowledge and those who have reason to know of direct infringement."); *Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110, 118 (2d Cir. 2010) ("contributory infringement liability is imposed on persons who 'know or have reason to know' of the direct infringement"); *Fahmy v. Live Nation Entm't, Inc.*, No.

---

**PLAINTIFF'S OPPOSITION TO PARTIAL MOTION TO DISMISS**

2:15-cv-01158-CAS (PJWx), 2015 U.S. Dist. LEXIS 75347, at *14 (C.D. Cal. June 8, 2015) (noting the "know or have reason to know" constructive knowledge standard).

That standard is satisfied by the pleading at issue here, which alleges: "[a]t all times, Defendant knew or should have known that it never owned or had any rights or interest to use any of the Photographs." (FAC, Dkt. No. 72, at ¶ 118). This is not just boilerplate but is factually supported by the allegation that such knowledge is, at a minimum, plausible, because "when Defendant obtained the EPA Photograph, the Photograph contained Plaintiff's copyright notice attributing to Plaintiff the authorship of, and ownership of, the copyright in the Photograph." (*Id.* at ¶ 18). As such, Defendant knew or should have known that *any* use of the EPA Photograph by or at the direction of TYT would infringe Plaintiff's copyright interests in the EPA Photograph without obtaining her permission.

Moreover, Defendant knew and knows how YouTube works, including its features enabling the monetization and sharing of videos. TYT has published over 50,000 videos to its YouTube Channel since 2005, and now has over 5.5 million YouTube subscribers. (*See* Wax Decl., at ¶ 3 and Ex. A). Given TYT's sophistication as a publisher and its long history and experience in maintaining its YouTube Channel, TYT knew or should have known that third parties have the ability to download those YouTube videos, and in fact, did so. Since Defendant knew or should have known that each and every one of its own uses of the EPA Photograph was unlawful, it likewise knew or should have known that any downstream use, distribution or display of the EPA Photograph by would also be unlawful. That is, Defendant knew that any third party would be infringing Plaintiff's copyright interests each time they downloaded the EPA Photograph with the EPA Video from Defendant's YouTube Channel, and each time those third parties republished, distributed or re-displayed the EPA Photograph. *See Columbia Pictures Indus. v. Gary Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) ("Both uploading and downloading copyrighted material are infringing acts"); (*See also* FAC, Dkt. No. 72, at ¶ 18: alleging that third parties "reproduced, distributed and/or publicly displayed the EPA Photograph each time [they]

shared the EPA Video or a hyperlink to the EPA Video, with or without embedding the EPA Video."). Nevertheless, Defendant knowingly made the EPA Photograph available for download and distribution, and it is more likely than not that discovery will likely show that third parties did in fact download and distribute the EPA Photograph. (*See* Wax Decl., at ¶¶ 4-6 and Ex. B). Since each download is an infringing reproduction, the download function, with respect to the EPA Video and EPA Photograph, is not capable of non-infringing uses. As such, TYT had actual or constructive knowledge of the third-party infringing activities.

### B. *Young Turks Materially Contributed to the Infringing Activity*

Similarly, Defendant knew that it was materially contributing to the unlawful reproduction, distribution and display of the EPA Photograph by those third parties, particularly as Defendant induced, enabled and encouraged users to download, distribute, share and republish the EPA Photograph and EPA Video.

"'Material contribution' is established where an entity 'encouraged or assisted others' infringement or provided machinery or goods that facilitated infringement." *Munhwa Broad.*, 2015 U.S. Dist. LEXIS 77909, at *11 (C.D. Cal. May 12, 2015) (*quoting Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp.2d 398, 432 (S.D.N.Y. 2011)); *see also Fahmy*, 2015 U.S. Dist. LEXIS 75347, at *20 (C.D. Cal. June 8, 2015) ("Material contribution turns on whether the activity in question 'substantially assists' direct infringement."). In the online context, a defendant is thus liable under a contribution theory "if it has actual knowledge that *specific* infringing material is available using its system and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works." *Giganews*, 847 F.3d at 671; *see also Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp.2d 398, 431 (S.D.N.Y. 2011) ("Failure to utilize existing technology to create meaningful barriers against infringement is a strong indicator of intent to foster infringement.").

---

**PLAINTIFF'S OPPOSITION TO PARTIAL MOTION TO DISMISS**

Here, TYT provided substantial assistance to the infringing activities of third parties by providing both the infringing material itself as well as the "machinery . . . that facilitated infringement." *Munhwa Broad.*, 2015 U.S. Dist. LEXIS 77909, at *11.   Additionally, Young Turks had actual or constructive knowledge of specific infringing material available on its system because TYT itself chose to upload, display and otherwise use the EPA Photograph, despite the fact that, at all relevant times, TYT knew or should have known that Plaintiff is the author and owner of the EPA Photograph.  (FAC, Dkt. No. 72, ¶¶ 18, 89, 118).   Furthermore, TYT could have taken "simple measures to prevent" further reproductions, distributions, publications, displays and other uses of the EPA Photograph. *Giganews*, 847 F.3d at 671.  Specifically, Defendant could have: (a) removed the EPA Photograph altogether, (b) restricted the accessibility of the EPA Photograph, such as by designating the EPA Video "private" or "unlisted," (c) or at a minimum, it could have disabled the download function with respect to the EPA Video.  (Wax Decl., at ¶¶ 4-6). When third parties downloaded the EPA Photograph from TYT's YouTube Channel, TYT also knew that, by enabling the downloads, TYT was providing the machinery or instrumentality for infringement.

TYT argues that "[a]n allegation that a defendant merely provided the means to accomplish an infringing activity is insufficient to establish a claim for [contributory] copyright infringement."  (TYT's Memo of Law, Dkt. No. 75, at 13) (*quoting Tarantino v. Gawker Media, LLC*, No. CV 14–603–JFW, 2014 WL 2434647 at *3 (C.D. Cal. Apr. 22, 2014)).   But that is an incorrect statement of the law.  A party will not be held contributorily liable for merely providing the means or machinery for facilitating infringement provided that the machinery is capable of substantial non-infringing uses. *See Grokster*, 545 U.S. at 931-34 (discussing *Sony Corp. v. Universal City Studios*, 464

U.S., 417, 442 (1984)). However, there is no non-infringing use of the download function with respect to the EPA Photograph that is downloaded each time with the EPA Video.[4]

Furthermore, *Tarantino* is factually distinguishable from this case. In *Tarantino*, the defendant merely provided a link to a third-party's website from which the infringing video was available. *See Tarantino*, 2014 WL 2434647, at *2, 4 ("[a]lthough Defendant did not post or publish the screenplay, Defendant did include hyperlinks to AnonFiles.com and Scribd.com where the screenplay already had been published. . . . Plaintiff's contributory infringement claim is based on Defendant . . . providing links to copies that someone else had already posted on AnonFiles.com and Scribd.com."). By contrast, in this case, TYT itself posted the EPA Photograph on a webpage under TYT's own control. (*See* Wax Decl., at ¶ 2 and Ex. A). Thus, unlike in *Tarantino*, the infringing work was uploaded and then made directly available for download by the defendant here, enabling further acts of reproduction, distribution and display.

In summary, TYT provided substantial material support to third parties who reproduced, distributed, republished, re-displayed and otherwise used the EPA Photograph that was uploaded by TYT to its YouTube Channel.

C. *Defendant's Remaining Arguments Lack Merit*

Finally, to the extent that TYT is arguing that Plaintiff's contributory copyright infringement claim should be dismissed because the FAC does not identity the third-party direct infringers or the dates of their infringing actions, TYT's Motion should be denied because Plaintiff is not required to plead such specifics under Rule 8.

---

[4] There is also an important distinction between the "substantial non-infringing use" cases, where the defendant in those cases was the technology provider, as opposed to a user of the technology with the ability to turn off the function enabling the infringement. Plaintiff does not allege that YouTube's download option renders *YouTube* liable as a secondary infringer. Rather, Plaintiff alleges that TYT is liable due to its voluntary use of that feature to encourage infringement by its users, and its failure to disable it for a known infringement. That is, the Court should not look at whether YouTube's download function, *generally*, is capable of substantial non-infringing uses, but only at the download function with respect to the EPA Photograph as actively used (and not disabled) by TYT.

A plaintiff asserting an indirect copyright infringement is not required to identify the specific third party *actors* but must simply allege "knowledge of *specific acts* of infringement." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 259 F. Supp.2d 1029, 1035, (C.D. Cal.), *aff'd* 380 F.3d 1154 (9th Cir.), *aff'd in part, rev'd in part*, 545 U.S. 913 (2005). That is, there is no requirement that a plaintiff sue, let alone identify the direct infringer(s), whose conduct gives rise to the named defendant's secondary liability. *See id.*; *see also A & M Records, Inc. v. Napster, Inc.*, 114 F. Supp.2d 896, 920-21 (N.D. Cal.), *aff'd in part, rev'd in part*, 239 F.3d at 1022 (affirming Napster's contributory liability because it had "actual knowledge of the specific infringing material"); *In re Aimster Copyright Litig.*, 334 F.3d 643 (7th Cir. 2003) (contributory liability depends on knowledge of "specific infringing files" not the specific infringers).

In the cited cases, courts did not let the operators of peer-to-peer networks escape liability for permitting, enabling and otherwise contributing to mass copyright infringement of songs being uploaded and downloaded by anonymous third parties. Here, the contribution is even less attenuated:  TYT is not a network operator but is the party who uploaded and made available for download by those anonymous third parties. Therefore, Defendant cannot disclaim knowledge of the fact that downloads of the EPA Photograph infringed.

Defendant argues that "the FAC does not 'allege a single act of direct infringement committed by any member of the general public that would support Plaintiff's claim for contributory infringement.'" (TYT's Memo of Law, Dkt. 75, at 13).  TYT is wrong.  The FAC alleges that third parties "reproduced, distributed and/or publicly displayed the EPA Photograph each time [they] shared the EPA Video or a hyperlink to the EPA Video, with or without embedding the EPA Video." (FAC, Dkt. No. 72, at ¶ 89).

The Court should also reject TYT's reliance on *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) and *Panoramic Stock Images, Ltd. v. Pearson Educ., Inc.*, No. 12-cv-9918, 2013 WL 2357586, *3 (N.D. Ill. May 29, 2013).  In *Luvdarts*,

the plaintiff alleged that AT&T was responsible for infringing messages transmitted by one third-party to another via AT&T's messaging service, but the Ninth Circuit held that the plaintiff failed to allege "more than a generalized knowledge . . .of the possibility of infringement." That is not the case here because TYT's culpability does not stem from its ownership of a vast communication network, but on a single photograph that TYT itself uploaded and distributed via its own YouTube Channel. In *Pearson*, the court dismissed the contributory infringement claim because the complaint did not identify a specific infringing act by any third party, but merely alleged that the defendant "facilitated the international distribution of its publications, in part, through its international rights management group." *Id.*, 2013 WL 2357586, *3. In other words, the plaintiff did not actually allege that any of the photographs at issue were reproduced or distributed. (*Contrast* FAC, Dkt. No. 72, at ¶ 18). Furthermore, the *Pearson* Court did not dismiss the claim because plaintiff did not "identify any third party or publication that allegedly infringed on its copyrights," but because the plaintiff did not plead *"any factual basis suggesting that Pearson induced or encouraged infringement*." *Id.*, 2013 WL 2357586, at * 4 (emphasis added).

The Court should deny TYT's Motion to dismiss Plaintiff's cause of action for contributory copyright infringement.

### III.   Plaintiff's Section 1202 Claim Is Sufficiently Pleaded

TYT hopes to avoid liability for altering Dermansky's CMI. But the fact that TYT supplied an authorship credit to Dermansky under its video does not, as a matter of law, somehow excuse or immunize TYT from liability for its removal of her very different watermarks from the photos themselves. Quite the opposite is true. That very act of altering or removing Dermansky's watermark *establishes* TYT's intention to conceal its own infringement and to facilitate downstream infringement.

When Dermansky published her photographs, each of them contained a watermark inside the photograph itself with both a copyright notice and Dermansky's name.

---

**PLAINTIFF'S OPPOSITION TO PARTIAL MOTION TO DISMISS**

18

(Dermansky Decl., Dkt. No. 20, at ¶¶ 5-6, and Exs. 2-5).  CMI is defined as including, separately, authorship and/or ownership information as well as providing a copyright notice.  *See* 17 U.S.C. § 1202(c)(1)-(3).  Defendants infringed the photographs without her permission, and adding to the injury, intentionally cropped or otherwise altered the photographs so that her watermarks with her CMI was removed or not apparent in each instance.  Section 1202(b) does not condone such conduct; it condemns it.

Section 1202(b) of the Copyright Act contains three prongs, each with different knowledge and intent requirements.  Section 1202(b)(1), which is the only prong requiring an intentional act, states, in pertinent part, that "no person shall, without the authority of the copyright owner or the law, *intentionally remove or alter any copyright management information* ["CMI"]… knowing, or… having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." (Emphasis added).   By contrast, Sections 1202(b)(2) and (b)(3) do not require an intentional act, but rather merely require knowledge that CMI has been altered or removed upon distribution or performance of the copyrighted works.

To prove a violation of Section 1202(b), a plaintiff must prove the following: (1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant "distribute[d] . . .  works [or] copies of works"; (3) while "knowing that [CMI] has been removed or altered without authority of the copyright owner or the law"; and (4) while "knowing, or . . . having reasonable grounds to know" that such distribution "will induce, enable, facilitate, or conceal an infringement." *Mango v. Buzzfeed*, 970 F.3d. 167, 171 (2d Cir. 2020).

TYT's suggestion that those provisions create a "double scienter" requirement is incorrect, which is why courts refer to it only as a "so-called" requirement.  *Id.*  Rather, the 1202(b)(1) issue must be considered as two separate inquiries: (1) did TYT intend to take the action it (or its agent, Fox) took in removing and altering Dermansky's CMI; and (2) did it have reason to know that doing so would cause the risk of concealing either its own

infringement or other downstream infringement.  By contrast, for sub-sections (b)(2) and (b)(3), no intent is required, but rather mere knowledge that Dermansky's CMI was changed or removed is sufficient for the imposition of liability.

The Complaint establishes that those two inquiries lead only to one possible conclusion.  TYT (or its agent Fox) intentionally cropped or otherwise altered the photographs to remove the © notice and ownership attribution from the DeSmog publication which said "© Julie Dermansky" in each instance.  (Dermansky Decl., Dkt. No. 20, at Exs. 2-5).  Any claim that those alterations were accidental is purely factual in nature, is a question of credibility for the jury, and certainly cannot be determined on a motion to dismiss.  *See, e.g., Walker Digital, LLC v. Facebook, Inc.,* 852 F. Supp.2d 559, 567 (D. Del. 2012) (knowledge and subjective intent hinge on the fact finder's assessments of the credibility of witnesses which is peculiarly within the province of the fact finder upon observation of the witnesses) (citations omitted).  Indeed, in a case involving a similar fact pattern, the District Court in Eastern Louisiana recently rejected both a motion to dismiss and a summary judgment motion seeking dismissal of Ms. Dermansky's claims under Section 1202.  *See Dermansky v. Hayride Media, LLC*, Civ No. 2:22-cv-03491-WBV-KWR (E.D. La. 2023), Wax Decl. at ¶ 7 and Exs. C, D and E.

Furthermore, the designation on the original photographs, "© Julie Dermansky," establishes authorship, ownership and copyright notice, all three of which are separate items of CMI.  17 U.S.C. § 1202(c)(1)-(3).  The credit that TYT intentionally chose to substitute for Dermanksy's original watermark is very different and lacks the same legal significance.  "Photo by Julie Dermansky for DeSmog Blog," indicates only that Dermansky is the author, and falsely suggests DeSmog is the owner.  Thus, not only did TYT remove the © notice which constitutes removal of CMI under Section 1202(c)(1), but while TYT's credit denoted authorship, which constitutes CMI under Section 1202(c)(2), it also falsely suggested that DeSmog is the owner of the copyright, which constitutes false CMI under Section 1202(c)(3).

That this act of "cropping" was intentional cannot be seriously in doubt at this stage of the case:  there would have been no reason to add the credit under the video content had TYT not removed her embedded watermarks from the original photographs when TYT stole them.  Importantly, the location of the watermark (embedded in the photographs rather than in a caption under the video content) is very important when still images are converted to video because when downstream parties view or download the video, they do not necessarily see or copy the images contained in the separate area below the photographs.  TYT's conduct therefore made further infringement of Dermansky's work far easier and more likely to occur.

Thus, the addition of a false and misleading credit does not cure TYT's "removal" of the original watermarks.  Instead, it changed the meaning of the credits and constitutes "alteration" of how Dermansky wished her CMI to be conveyed.  Accordingly, these intentional acts violate §1202(b)(1) (removal and alteration with no distribution requirement) as well as §§ 1202(b)(2) and (b)(3) (not requiring intent, but only requiring that distribution or performance be done knowing that the CMI had been removed or altered, which TYT clearly did).

The only issue here is thus the fourth element identified by the *Mango* court.  The Court can reasonably infer that TYT knew or at least reasonably should have known that cropping Dermansky's copyright notice and watermark would not only conceal its own infringement, but that it would also cause downstream infringement by moving the CMI from the watermark (where it could not easily be removed or disregarded) to a tag line *under* the video, where the watermark would not follow.  Any alternative explanation by TYT is highly factual in nature and subject to credibility determinations by the jury.  (See *Hayride* Amended Order and Reasons, Wax Decl., at Ex. E, at 38-39 and n. 187).  A fact finder can reasonably find that by moving the location and changing the notice and text, TYT either knew, or should have had "reason to know" that both its own infringement

would be concealed, and others would use the photographs from the video itself without the TYT-created tag line.

As the Second Circuit noted in *Mango*, citing the Third Circuit's decision in *Murphy v. Millenium Radio Grp. LLC*, 650 F.3d 295, 303 (3d Cir. 2011), "interpreting Section 1202(b) to limit liability to defendants with knowledge of likely future infringements by third parties would be inconsistent with the purpose of the DMCA, which is to provide broad protections to copyright owners." *Mango*, 970 F.3d at 174 n.2.  And, in *Murphy*, the Court stated: "[a]s for the purpose of the statute as a whole, it is undisputed that the DMCA was intended to expand— in some cases . . . significantly — the rights of copyright owners.").  *Murphy*, 650 F.3d at 303.  Indeed, as explained in *Mango*, "we thus reject the argument that a defendant must know or have reason to know about likely future infringement by third parties."  *Mango*, 970 F.3d at 172.

TYT seeks refuge in *Mills v. Netflix, Inc.*, No. 19-cv-07618-CBM, 2020 WL 548558 (C.D. Cal. Feb. 3, 2020), where the underlying work was originally a video, not a still photo with a watermark, and is thus inapposite.  There, Netflix took clips from the plaintiff's YouTube video and incorporated the clips into Netflix's own documentary video.  *Id.* at *4.  Netflix added plaintiff's twitter handle onto each of the clips *within the infringing video*, added plaintiff's name to the credits of the documentary, but removed the title of plaintiff's video and unspecified "other metadata" from the plaintiff's work.  *Id.* at *9.  The Court held that plaintiff had not plead that Netflix had the requisite knowledge or intent required for a DMCA claim or that CMI had been removed from the body of the work itself, since it was still contained *within the infringing video*.  *Id.* at *8.  That is plainly very different from what occurred here.  Similarly, the facts alleged at the pleading stage in the five other decisions from various district courts cited by TYT do not come close to what occurred here.

TYT argues that because it included an authorship credit to Dermansky *below* the Josh Fox Video, it could not have had the requisite intent or knowledge to alter the

embedded watermarks as a *matter of law*.  TYT argues that its inclusion of a false and misleading notation should, without any discovery, conclusively establish that it did not "intend" to induce, enable, facilitate, or conceal an infringement.  That argument is unsustainable for any number of reasons.  First, the kind of "intent" TYT argues for is not required; rather, under the last sentence of Section 1202(b), it is sufficient that TYT should have reason to know the effects of its actions.  By removing Dermansky's watermark from the face of the photographs, TYT created a "risk-on" situation where would-be infringers of Dermansky's photographs could have access to versions of Dermansky's photographs without her copyright notice embedded within them as she intended them to be viewed.

Further, TYT intentionally disregarded *and eliminated* Dermansky's CMI watermarks, making it far more likely that potential infringers would take the photographs without any accompanying CMI at all.  By removing Dermansky's watermark from the embedded location on the original photographs, TYT has made it much easier for other would-be infringers to screenshot and use the entirety of Dermansky's photographs without the distinctive watermark alerting viewers to the true ownership of the photographs.

No decision cited by TYT countenances such an outcome.  Therefore, TYT's Motion should be denied in its entirety.

## **CONCLUSION**

This action was timely filed as to the EPA Photograph, Plaintiff adequately alleges contributory infringement, and adequately alleges violations of Section 1202 of the Copyright Act.  TYT's partial motion to dismiss should be denied.

Respectfully submitted,

Dated:  September 22, 2023

**LEICHTMAN LAW PLLC**

By:   */ s /  David Leichtman*

David Leichtman *admitted pro hac vice*
Shane Wax *admitted pro hac vice*
185 Madison Avenue, 15th Floor
New York, New York 10016
Tel: 212-419-5210, Ext. 1
Email: dleichtman@leichtmanlaw.com
Email: swax@leichtmanlaw.com

Dated:  September 22, 2023

**GODWIN LLP**

By:   */s/ Harold McDougall IV*

Harold McDougall IV
12021 Wilshire Blvd #538
Los Angeles, CA 90025
Tel: (424) 704-5647
Email: harold@godwinllp.biz

*Attorneys for Plaintiff Julie Dermansky*